UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

UNITED STATES OF AMERICA,                         Criminal No. 08-6 MJD/AJB

        Plaintiff,

v.                                                **REPORT AND RECOMMENDATION**

SHANE NATHANIEL TOWNSEND,

        Defendant.

    Nathan Petterson, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Lyonel Norris, Esq., Assistant Federal Defender, for defendant, Shane Nathaniel Townsend.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on November 6, 2008, at the U.S. Courthouse, 316 No. Robert St., St. Paul, MN 55101. The Court issued an Order on Motions dated November 7, 2008, reserving defendant's motion to suppress statements [Docket No. 12], motion to suppress search and seizure evidence [Docket No. 18], and motion to suppress eye witness identifications [Docket No. 19], for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with witness testimony, exhibits, and memorandums of counsel, the magistrate judge makes the following:

**Findings**

On December 11, 2007, at approximately 2:30 p.m., St. Paul Police Officer Ian Kough received a dispatch regarding a bank robbery that had just occurred at the TCF Bank branch at 459 North Lexington. The dispatch report indicated that the robbery suspect was a 40-

45 year old Hispanic male; five-foot-nine-inches to five-foot-ten inches in height, and weighing 150 to 175 pounds; and wearing a hat and a jacket with an automobile decal.  Officer Kough was alone in a marked squad car in the vicinity of the robbery when the dispatch was received.  He drove to University Ave. and proceeded on University to assist in the investigation.  Meanwhile, a second dispatch message was issued, advising officers that a witness had observed the suspect getting on the No. 16 bus, heading eastbound.  Officer Kough spotted the No. 16 at the bus stop at University and Chatsworth.  At this time Officer Kough was behind another squad driven by Officer Bydovsky.  Bydovsky stopped his squad car in front of the bus and Kough stopped his squad car behind the bus.  As Officer Bydovsky was commencing to go into the bus through the front entry door, Officer Kough observed two or three individuals in the process of exiting the bus.  One of those of those persons generally matched the height and physical build of the bank robber as provided by dispatch, though he was now wearing a blue sweatshirt.  This individual, subsequently identified as defendant Shane Nathaniel Townsend, was seen walking inside the bus towards the front exit.  Townsend abruptly turned around and exited at the back of the bus, only to observe Officer Kough outside near the back of the bus.  Officer Kough drew his firearm and ordered the defendant to stop.  The defendant was looking around in different directions, indicating to the officer that he might be searching for an escape route.  Defendant Townsend then ran north across University Ave. as Officer Kough followed and again ordered him to stop and show his hands.  Officer Bydovsky likewise followed.  As he was running away the defendant kept his left hand in a pocket and his right hand in his waistband, leaving officers uncertain as to whether he was carrying a weapon.  As the pursuit continued across a parking lot at Chatsworth and University, the defendant pulled his hand from the pocket and threw away a

large amount of cash bills.  Officer Kough was able to catch the defendant and tackle him to the ground, after first holstering his weapon.  Townsend continued to struggle and refused to comply with the officer's command to take his other hand from his waistband.  As Kough held the suspect down, with Bydovsky covering, Kough withdrew his Taser weapon and attempted to shock Townsend on his back, through his clothes.  The Taser shot was not fully successful, prompting Kough to apply a Taser shop to the defendant's ankle.  Though good contact was made, and defendant declared "I give up," he nonetheless continued to struggle, and a third Taser shot was administered.  The defendant thereafter became compliant.  In searching Townsend's person, officers discovered a large amount of cash, a note demanding money, and a jacket with a Kline Auto Dealership decal.

        The defendant was placed in a squad car while the bank teller was being brought to the scene for a show-up identification.  The Kline Auto jacket was placed on the defendant.  The witness arrived at the scene within 10 minutes after the Taser applications and remained in a vehicle while the defendant was taken out of the squad car.  The teller had observed the robber from across a counter at a teller window and had followed the defendant out the door as he left the bank.  The teller had further seen the suspect run northbound towards a bus and appear to get on the No. 16 bus.  The teller positively, and without reservation, identified Mr. Townsend as the bank robber.

        The defendant was then brought to Regions Hospital for removal of a Taser probe from his lower back.  Meanwhile, FBI Special Agent Matthew Parker went to the hospital where he and FBI Task Force Officer Rob Merrill met with the defendant on that same afternoon.  The agents were seeking to interview the defendant in a hospital sheriff's holding area, a room off a

hallway with a metal door.  Special Agent Parker read the defendant his <u>Miranda</u> rights from a pre-printed card, and he asked the defendant if he understood and would waive those rights.  Mr. Townsend stated that he had a prior history of arrests and was familiar with <u>Miranda</u>, and he expressly stated that he understood and would waive his rights.   The agent thereafter prepared a handwritten waiver stating, "Agent Parker read me my Miranda Rights.  I waived them and agreed to speak to SA Parker and Merrill."  (Hearing Exh. No. 1).  The document was signed by the defendant at 4:55 p.m. and was witnessed by Special Agent Parker and Officer Merrill.  After the rights were given the defendant commented, "I shouldn't say anything," and Parker began to take him away.  Townsend then stated that would speak with them if he was given a cigarette.  After having a smoke the defendant again agreed to talk with Agent Parker and an interview took place.  No threats or promises were made to induce the defendant's cooperation; the defendant made no request for the assistance of an attorney; and the defendant did not ask that the interview be stopped.  During questioning the defendant made incrimination statements, and he further stated that he had robbed the same bank a week earlier.  When asked what had happened to his hat, Mr. Townsend pulled a hat out from his pant leg.

Based upon the foregoing Findings, the Court makes the following:

**Conclusions of Law**

**Stop and Seizure of Evidence.**   Defendant's stop and the search of his person following apprehension were based upon probable cause to make a warrantless arrest and suppression of evidence obtained immediately subsequent to the stop is not required.  Probable cause for warrantless arrest exists when facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed an offense.  <u>United States v.</u>

Jones, 535 F.3d 886, 890 (8th Cir. 2008)(citing Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007)). The probable cause evaluation entails consideration of events leading up to the arrest, viewed from the standpoint of an objectively reasonable officer. Jones at 890 (citing Maryland v. Pringle 540 U.S. 366, 371, 124 S.Ct. 795 (2003). In the present case the arresting officers had received a description of the suspect's height, weight, and clothing; a witness reported he had followed the suspect as he left the bank, ran to a bus stop, and appeared to get on the No. 16 bus; and this information was timely relayed to officers within a few minutes of the robbery. When the No. 16 bus stopped, Officer Kough observed a person getting off the bus whose physical appearance was consistent with the dispatch description, whose behavior was reasonably suspicious to Officer Kough, and who immediately fled upon being told to stop and continued to run away when chased by an officer. These factual circumstances provide ample evidence to establish probable cause for defendant Shane Nathaniel Townsend's arrest and seizure for robbery of the TCF bank. The ensuing search of the defendant's person was a lawful search incident to arrest and evidence thereby obtained need not be suppressed. Jones at 891 (citing United States v. Oakley, 153 F.3d 696, 698 (8th Cir. 1998)).

**Show-up Identification.**   Suppression of identification evidence on grounds that a witness identification of the defendant was made pursuant to constitutionally impermissible show-up procedures is not required. Even if the court were to assume that the pretrial confrontation in this instance was impermissibly suggestive, the court concludes that the identification was not made under circumstances that would create a substantial likelihood of misidentification and is unreliable on that ground. United States v. Jones, 535 F.3d 886, 891 (8th Cir. 2008)(citing United States v. Martinez, 462 F.3d 903, 910 (8th Cir. 2006)). In

particular, the court finds that the identifying witness had ample opportunity to view the suspect at the time of the crime; the witness teller had direct contact with the suspect and therefore had substantial degree of attention paid to the suspect; the initial description of the suspect, though somewhat generalized, was accurate; and the witness demonstrated a high level of certainty at the time of the show-up. Jones at 891 (quoting factors cited in United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003)). Under the totality of the circumstances relating to the show-up identification in this matter, there is minimal likelihood of misidentification by the witness teller and defendant's motion to suppress identification evidence should therefore be denied.

**Statements.** Defendant Shane Nathaniel Townsend's interview statements on December 11, 2007, were not unlawfully obtained in violation of the defendant's constitutional rights, and suppression of any statements is not required. Defendant's statements to Special Agent Parker and Officer Merrill were made knowingly, intelligently, and voluntarily. Defendant was properly advised of his rights as an accused person; no threats or promises were made to induce defendant's cooperation; he expressly waived his rights orally and in writing (Hearing Exh. No. 1); and there was no request for the assistance of an attorney. Though defendant was in custody, he was not subjected to coercion and his statements were not the fruit of an unlawful arrest. United States v. Robinson, 20 F.3d 320, 322-23 (8th Cir. 1994). There is no basis for suppression of defendant's interview statements.

Based upon the foregoing Findings and Conclusions of Law, the Magistrate Judge makes the following:

**RECOMMENDATION**

It is hereby **recommended** that:

1. Defendant Shane Nathaniel Townsend's Motion to Suppress Statements, Admissions and Answers be **denied** [Docket No. 12];

2. Defendant Shane Nathaniel Townsend's Motion to Suppress Evidence be **denied** [Docket No. 18]; and

3. Defendant Shane Nathaniel Townsend's Motion to Suppress Eyewitness Identifications be **denied** [Docket No. 19].

Dated:     November 16, 2008

    s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before December 2, 2008.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.